Case: 5:20-cv-00665-SL Doc #: 1-1 Filed: 03/30/20 1 of 32. PageID #: 4

Summit County Court of Common Pleas
**Civil Division**

[ Print Form ]
[ Reset Form ]

**Instructions:** Complete the following form and file with the Summit County Clerk of Courts – Civil Divsion, located at: 205 South High Street, 1st Floor, Akron, Ohio 44308.

**Case Caption:**

Richard Cook et al
_____
Plaintiff

v.

Case Number _____

Springfield Twp, et al.
_____
Defendant

**INSTRUCTIONS FOR SERVICE**

**To Clerk**: You are hereby requestd to make service upon the following by:

- ☒ FedEx
- ☐ Certified Mail
- ☐ Regular Mail
- ☐ Sheriff Service (Personal)
- ☐ Sheriff Service (Personal or Residential)
- ☐ Personal Service Process Server: _____

**Please Serve the following pleadings:**    Complaint
_____
_____
_____

**Parties to be served:**

Name: SPRINGFIELD TOWNSHIP

Address: 2459 CANFIELD ROAD

Address: _____

City: Akron    State: OH    Zip: 44319

Name: THE VILLAGE OF LAKEMORE

Address: 1400 MAIN STREET

Address: _____

City: LAKENMORE    State: OH    Zip: 44250

Name: RICHARD JUSTICE

Address: 2498 LAKESIDE DR

Address: _____

City: LAKEMORE    State: OH    Zip: 44250

Name: CHIEF KENNETH RAY

Address: C/O VILLAGE OF LAKEMORE

Address: 1400 MAIN ST

City: LAKEMORE    State: OH    Zip: 44250

s/ Warner Mendenhall    0070165
_____
Attorney for Plaintiff (or pro se litigant)    Supreme Ct #

CV Form 014    Rev 1.1 20131002-08/17

# IN THE COURT OF COMMON PLEAS
## SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD T. COOK<br>5519 TALLMADGE ROAD<br>ROOTSTOWN, OH 44272 | ) )<br>) )<br>) ) | CASE NO.: |
| | ) ) | **This is a refiled case** |
| and | ) ) | *assigned to Judge McCarty* |
| | ) ) | *previous case no.: CV-2018-03-1223* |
| T-M-K KING, INC.<br>5 NORTH ARLINGTON ST.<br>AKRON, OH 44305 | ) )<br>) )<br>) ) | JUDGE ALISON McCARTY |
| | ) ) | **COMPLAINT** |
| and | ) ) | |
| | ) ) | **(JURY DEMAND ENDORSED** |
| WHOLE-SALE BEDDING, INC.<br>2407 COLUMBUS RD. N.E.<br>CANTON, OH 44705 | ) )<br>) )<br>) ) | **HEREON)** |
| | ) ) | |
| and | ) ) | |
| | ) ) | |
| MIDDLEBURY BANC, INC.<br>5 NORTH ARLINGTON ST.<br>AKRON, OH 44305 | ) )<br>) )<br>) ) | |
| | ) ) | |
| Plaintiffs, | ) ) | |
| | ) ) | |
| -vs- | ) ) | |
| | ) ) | |
| SPRINGFIELD TOWNSHIP<br>2459 CANFIELD ROAD<br>AKRON, OH 44312 | ) )<br>) )<br>) ) | |
| | ) ) | |
| -and- | ) ) | |
| | ) ) | |
| THE VILLAGE OF LAKEMORE<br>1400 MAIN STREET<br>LAKEMORE, OH 44250 | ) )<br>) )<br>) ) | |
| | ) ) | |
| -and- | ) ) | |
| | ) ) | |
| RICHARD JUSTICE<br>2498 Lakeside Drive<br>LAKEMORE, OH 44250 | ) )<br>) )<br>) ) | |
| | ) ) | |

(This individual is sued in his official and          )
 individual capacity)          )
           )
  -and-          )
           )
CHIEF OF POLICE KENNETH RAY          )
C/O THE VILLAGE OF LAKEMORE          )
1400 MAIN STREET          )
LAKEMORE, OH  44250          )
           )
(This individual is sued in his official and          )
 individual capacity)          )
           )
           )
      Defendants.          )

## INTRODUCTION

1.      This case addresses violations and damages stemming from the misconduct of various officials, individuals, entities, and police officers in connection with the execution of a search warrant, the removal of property, and the refusal to return property belonging to the Plaintiffs. These violations were unlawful under state and federal law.

2.      This refiled case is based on the same factual allegations as the original case. As refiled, Susan K. Lindsley is not named as a Plaintiff, and the "Emotional Distress" claim is removed.  Factual allegations regarding Lindsley remain included herein as they provide necessary and relevant background information relating to the scheme alleged. Officer Jamie Mizer has been removed as a Defendant, but the factual allegations regarding her actions remain as her actions were at the direction or to further the mission of her superiors.  Other officers were removed from the Complaint.

## PARTIES AND JURISDICTION

3.      Plaintiff Richard T. Cook is a citizen of the United States and resides in Portage County, Ohio.

4.      Plaintiff Whole-Sale Mattress, Inc., is a corporation, duly licensed and incorporated in Ohio, having its principal place of business and/or headquarters and/or statutory agent in Stark County, Ohio.

5.      Plaintiffs Middlebury Banc, Inc., and T-M-K King Inc. (hereinafer, "TMK"), are corporations, duly licensed and incorporated in Ohio, having their principal places of business and/or headquarters and/or statutory agents in Summit County, Ohio.

6.      Defendant Springfield Township is a unit of local government organized under the laws of the State of Ohio. Some of the individual Defendants were acting under the express and/or implied direction, policies, and approval of Defendant Springfield Township. Springfield Township is a political subdivision/entity and is subject to being sued under 42 U.S.C. § 1983.

7.      Defendant Village of Lakemore is a unit of local government organized under the laws of the State of Ohio. Some of the individual Defendants were acting under the express and/or implied direction, policies, and approval of Defendant Village of Lakemore. The Village of Lakemore is a political subdivision/entity and is subject to being sued under 42 U.S.C. § 1983.

8.      Defendant Richard Justice was the Mayor and official policy maker for the Village of Lakemore and had a duty to perform his duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. Defendant Justice is a "person" under 42 U.S.C.§1983 and at all times relevant to this action acted under color of law. Defendant Justice is sued in his individual and official capacity.

9.      Defendant Kenneth Ray was a Springfield Township Police Department Captain, and/or the Chief of Police for the Village of Lakemore and had a duty to perform his duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. Defendant Ray is a "person" under 42 U.S.C.§1983 and acted under color of law.

Defendant Ray is sued in his individual and official capacity.

10.     This action is brought under claims arising under the laws of the State of Ohio,

42 U.S.C. § 1983, and the First, Fourth and Fourteenth Amendments to the United States

Constitution. This action is also brought under 28 U.S.C. §§ 1983, 1985 and 1988 as it is also an

action for compensatory damages, punitive damages, and attorney fees.

## FACTS

11.     Richard T. Cook is a local businessman who owns various businesses, including

but not limited to Whole-Sale Bedding, Inc., a mattress manufacturing company, T-M-K King,

Inc., ("TMK") a property investment company that has, for several years, owned various

investment properties in and around Lakemore, Ohio, and Middlebury Banc, Inc., a private

money lending company that finances the purchases of residential properties.

12.     Since approximately 2005, Cook, through his property investment companies,

bought properties in and around Lakemore. By approximately 2011, Cook had purchased several

properties, including commercial properties, single-family homes and lake cottages, and was

leasing such properties to low-income families.

13.     Cook's business ran contrary to Mayor Justice and the Village of Lakemore's

plans to demolish homes (using grant funding) and to eradicate low-income housing so

properties could be redeveloped into higher end homes.

14.     In July of 2012, Mayor Justice attempted to have painting contractors hired by

TMK and a local artist arrested by the Springfield Police department for painting a mural with

the word "Lakemore" on the side of a commercial building owned by TMK. The painters had

begun working when the Springfield Police arrived. The Springfield Police stated that Mayor

Justice told them that the painters did not have a proper permit as required by local ordinance.

The Springfield Police stated that if the painters did not immediately cease work, they would be arrested and taken to jail. Susan Lindsley, a property owner in Lakemore and associate of Cook, demanded to see a copy of the ordinance that the painters were allegedly violating, but police could not provide a copy or even cite to the ordinance number. When he could not obtain copies of the local ordinances, which the Village claimed he was violating, Cook sued the Village on behalf of TMK.  Cook sought copies of the ordinances he was allegedly violating and copies of the Village of Lakemore's ordinances in general. It was at this time Cook learned that the Village of Lakemore does not have a bound copy (or other organized form) of their local ordinances. The lack of an actual bound or otherwise accessible copy of Lakemore's ordinances was an issue during the litigation and a source of consternation for Mayor Justice and the Village of Lakemore.  Lindsley maintained a file with pleadings and other documents related to this incident and lawsuit.

15.     In 2013, Lindsley contracted to purchase a home at 1443 Lake Road in Lakemore. While determining whether there were any zoning violations against the property, Lindsley was informed that the home would be torn down by the Village of Lakemore.  Lindsley filed a timely appeal to prevent the demolition. However, and without providing notice or a hearing, Lakemore destroyed the home.  Lindsley thereafter attempted to obtain public records from the Village of Lakemore to determine why and how Lakemore demolished the home. Lindsley thereafter filed a Writ of Mandamus to obtain public records to which the Village had unlawfully denied her access.  Lindsley eventually obtained records, which reflect that neither she nor the homeowners were given proper notice of the alleged violations, condemnation, or demolition. The destruction of the home violated state and/or federal law.  Lindsley investigated her options relative to a civil lawsuit stemming from Lakemore's misconduct and had a draft

5

Complaint, including state and federal claims, prepared for filing.

16.     Throughout 2013 and 2014, Lakemore, through Mayor Justice and other officials, cited properties owned by and/or through the Plaintiffs for various "housing violations." These citations were unfounded or so inconsequential such that the citations were clearly part of a retaliatory pattern of harassment. Lindsley maintained all records regarding these searches and citations as further evidence of unlawful harassment by the Village of Lakemore.

17.     In 2015, Lindsley talked with other residents concerned that the Village of Lakemore had awarded hundreds of thousands of dollars in unbid contracts for the surveying of properties to be demolished, road work, and other engineering, to one company, CT Consultants, through CT Consultants' agent/ employee, John Frola. Lindsley was concerned because these contracts were not part of a public bidding process and because of the expenditure of taxpayer dollars. Lindsley thereafter made a public records request for information regarding contracts between Lakemore and CT Consultants and other related documents. Lindsley compiled information and created a file specifically containing information regarding CT Consultants and the Village of Lakemore. In approximately September of 2015, Lindsley determined that Lakemore Village council had passed a resolution appointing CT Consultants as the Village Engineer. However, Lindsley could not find records of any bidding process by which CT Consultants was retained. Lakemore officials continually refused to provide public records and ordinances as she had requested. Despite assurances stemming from Cook's 2012 lawsuit regarding the Village of Lakemore's ordinances (and the proposed wall mural), the Village of Lakemore had still not organized, bound, or otherwise make their ordinances accessible or decipherable to the public.

18.      Lindsley ran for Mayor of the Village of Lakemore in November 2015. Cook publicly supported her candidacy. At a "candidates' night," whereby the public is invited to hear the candidates speak and to ask the candidates questions, Lindsley again brought up the contracts between CT Consultants and the Village of Lakemore, and issues regarding the lack of access to public records and the Village's ordinances. Lindsley raised these concerns as campaign issues as they were matters of public concern. Lindsley had raised these issues repeatedly in the past and was running for office, in part, to call attention to the Village of Lakemore's methods and lack of transparency.

19.      Springfield Township Police Officer Jamie L. Mizer was an employee or agent for Springfield Township and had to perform her duties in a lawful manner and to obey the Constitution, laws, and statutes of the State of Ohio and the United States. Defendant Mizer is a "person" under 42 U.S.C.§1983 and acted under color of law.

20.      The actions of Officer Mizer described hereafter were performed at the direction or to further the interests of her superiors, i.e., Mayor Justice and Captain Ray, who have final policymaking authority for the Village of Lakemore and Springfield Township, respectively.

21.      In December 2015, Officer Mizer went to Lakemore resident Andrew Miller's home. Miller had not contacted the police or requested any police assistance. When Officer Mizer went to Miller's home, Miller's home was in a tax foreclosure. Officer Mizer discussed the terms of Miller's homeownership with him and that Lindsley had sold Miller his home. Officer Mizer implied Lindsley or Cook had defrauded Miller. After speaking with Miller, Officer Mizer then spoke with Springfield Township Captain Ken Ray. Captain Ray indicated that he and Village officials had been investigating Lindsley and Cook since approximately 2012 for possible fraudulent real estate transactions. Ray could not find any evidence of a crime, and

which would be necessary to bring any criminal charges against them.

22.     Despite the absence of any criminal wrongdoing, Springfield Police Capt. Ray assigned part-time Springfield Patrol Officer Mizer to the full-time job of investigating Lindsley and Cook, without regard for the fact that Mizer was a Patrol Officer and not a detective and Ray was aware she had no experience or training in real estate fraud.

23.     Since the Village of Lakemore had been declared in a state of Fiscal Emergency, the Village could not maintain their Police Dept. and had contracted with Springfield Township for policing services. As Captain of the Springfield Police Department, and the former Police Chief for the Village of Lakemore, Capt. Ray answered directly to, and obtained directives from, Lakemore Mayor Justice. After exiting Fiscal Emergency, Lakemore cancelled their contract, and reopened the Lakemore Department, again with Ray as Chief.

24.     With no training relevant to real estate transactions or real estate fraud, Officer Mizer concluded that Lindsley had defrauded Miller out of seven thousand five hundred dollars ($7,500.00).

25.     Thereafter Officer Mizer, along with Captain Ray and Mayor Justice, used this allegation of "fraud" to embark on a course of outright harassment and unlawful persecution. Though no other homeowners had contacted the police or complained of any fraud, Officer Mizer went to several Lakemore homes under the guise of an expanded criminal investigation.

26.     In January 2016, Officer Mizer approached Samantha Becker regarding the purchase of her home from Cook's company, TMK.  Becker had not requested police assistance nor had she any reason to believe that she had been the victim of fraud relative to the purchase of her home. Despite Becker not requesting or needing police assistance, Officer Mizer visited B e c k e r  and questioned her regarding the terms of her home purchase. Initially Officer Mizer

called Becker's attention to one of the purchase documents that reflected Becker had obtained a

loan from the Veterans' Administration. Officer Mizer told Becker that Officer Mizer was

investigating the V.A. loan as it may have been fraudulent and a crime.  Becker was shocked at

the implication she had somehow fraudulently obtained a V.A. loan. Officer Mizer's

investigation then shifted to forgery. Officer Mizer questioned Becker regarding her signature on

many of the purchase documents, including but not limited to the mortgage. According to Officer

Mizer, Becker stated that her signatures had been forged on the real estate documents. (Becker,

has since stated that she *never* told Officer Mizer that her signatures were forgeries.)

  27.  Officer Mizer either fabricated Becker's allegation that her signatures were

forged, or Officer Mizer pressured Becker into lying about forged  signatures by making the

thinly veiled threat of criminal prosecution stemming from  Becker's "fraudulent" V.A. loans. In

either event, Becker's signatures were not forged and Officer Mizer knew this.

  28.  Despite knowing that no fraud or forgery had occurred, Springfield Officer

Mizer used this allegation of forgery to obtain search warrants for a "pattern of criminal activity."

Officer Mizer drafted an affidavit to support the search warrant which improperly included

inferences and conclusions that usurped the authority of the Court. The facts in Officer Mizer's

affidavit were not empirical facts but undisclosed conclusions. Officer Mizer also fully knew the

documents regarding Becker's home purchase were between Becker and TMK, Inc., located

at 5 North Arlington Street, Akron, OH, 44305. Despite this, and to further the Defendants'

conspiracy to harm the Plaintiffs, Officer Mizer obtained a search warrant for TMK's offices,

Cook's private residence, and Lindsley's private residence although there was not an allegation

by Mizer that evidence of an alleged crime might be found at those locations.

  29.  The search warrant requested by Officer Mizer was manifestly overbroad and

unreasonable, authorizing the police to take: "*Quit Claim Deeds, Conveyances, Private Mortgage Loans, Property Tax Records, Personal Identification records of victims, Eviction Notices, Warranty Deeds, Deeds in Lieu of Foreclosure, and other real estate related documents recorded through Summit County Fiscal Office, Summit County Court of Common Pleas, and Akron Municipal Court, Log Books, Records, Payment Receipts, Notes, Customer Identification Records, Ledgers, Passwords, Software Programs, and other records relating to the transportation ordering, and distribution of property and personal identification or electronic media regarding real estate transactions, Lock Boxes, Safes, or any item used to Preserve, Conceal, or Protect Documents and Maintain control of illegal personal identification documents, real estate record listed in part 1 , or documentary evidence, U.S. Currency stored and obtained through the commission of illegal activities, Indication of Occupancy, Residency, and/or ownership of the premise described above or vehicles located thereon. Including but not limited to utility bills, telephone bills, cancelled envelopes, keys, titles, and vehicle registrations belonging to suspects, and victims, any and all telephones, including memory devices and associated peripheral equipment, including automatic dialers, speed dialers, programmable telephone dialing or signaling devices, electronic tone generating devices: any and all computer hardware, including but not limited to, computer; hardware bearing the make (unknown), central processing units, external and internal drives and external storage equipment or media, terminals or video display units, together with peripheral equipment such as keyboard, printers, modems, or acoustic couplers, automatic dialers, speed dialers, or signaling devices, electronic tone generating devices, any and all computer or data processing software, or data including, but not limited, hard disks, floppy disks, cassette tapes, video cassette tapers [sic], magnetic tapers[sic], integral RAM or ROM units, and any other permanent or transient storage devices;*

*the following records or documents contained on paper in handwritten, typed, photocopied, or printed form, or stored on many other type of media, including but not limited to, telephone and communications activity and service Billing records, computer electronic and voice mail system information, access numbers, passwords, personal, identification numbers (PINS), telephone and address directories, logs, notes, emails, memoranda and correspondence relating to the operation of the electronic equipment or other media or software listed herein, any electronic and voice mail systems, information reflecting the use of a credit card or credit services to obtain property goods or services, any and all other fruits and instrumentality's of crimes related to: 2913.42, 2913.02, 2913.31M, 2913.43, 2913.49, data that will be contained on cassette tapes, video tapes, and in electronic and machine-readable media which in not readable by the Affiant and authorized officials assisting is the search in it's present state, authorization is given to these persons to seize, listen to, read, review, copy and maintain the above described property, and to convert it to human-readable form as necessary, being advised that data stored in computer and telephone memory machines may be lost if disconnected from the electrical power source.*"

30. Based on the misrepresentations in Officer Mizer's affidavit and search warrant, on March 16, 2016 dozens of law enforcement agents raided Cook's home, Lindsley's home, and the Middlebury Banc and TMK offices.

31. The raid at Lindsley's home was egregious. The officers conducted the search as if they were raiding the home of a notorious drug dealer. Approximately eight officers burst into Lindsley's home, without first knocking and announcing, in full gear and with assault weapons. Lindsley was home with her children, (G.M., age 5; R.M., age 8; Jeanna Butler, 18; Joshua Novisky, 19; and Jacob Novisky, 23). The officers swarmed the interior of the home and awoke the sleeping children while brandishing assault weapons. During the raid, Springfield officers

could be heard speaking with Mayor Justice on the telephone, informing him of the progress of the search and communicating with him regarding details of the raid.

32.     The Springfield Police, including but not limited to Captain Kenneth Ray, Jamie Mizer, James McKnight and approximately five (5) other Springfield Township John Doe Officers took every piece of paper, writings, journals, documents, letters, and several books from Lindsley's home. The Springfield Police Defendants seized computers, cell phones, family videos, coloring books, newspaper clippings, recipes, children's school papers and report cards, greeting cards, photographs, children's books, family records, the personal identification documents of everyone in the household, and tax, educational, medical, and social security documents belonging to not only members of the household, but also over two dozen other individuals. The documents taken included Lindsley's files regarding CT Consultants and the Village of Lakemore; the documents regarding Mayor Justice, Captain Ray and the Springfield Police seizure of Dupert's truck; the records and information regarding the demolished Village of Lakemore home which also included an unfiled civil Complaint; Lindsley's campaign materials (campaign signs, materials from the Board of Elections, postcards, campaign literature, and letters to the editors of local newspapers). The breadth and volume of records, ite personal property, business information, and other documents taken was well beyond the scope of the original search warrant.

33.     The Springfield Police took personal documents such as health insurance and medical records, cameras, computers, DVD players, and camcorders from Cook's home. The Springfield Police also took Cook's and his wife's cell phones; two video recorders; $247,000 in cash from a safe, $342 cash from Mrs. Cook (Plaintiffs note that the Springfield Police search warrant inventory sheet inaccurately states $232,062 was seized.). The breadth and volume of

12

records, items, personal property, and other documents taken was well beyond the scope of the
original search warrant.

34.     The Springfield Police also took a U-Haul truck-full of property from Cook's
place of business. They took filing cabinets of business records, supplier invoices and contracts,
franchise agreements, customer records, drawings, plans, statements, accounts payable records,
accounts receivable records, sign making machinery, campaign signs, printers, office equipment,
computers, property records such as insurance, title searches, settlement statements, leases, keys,
utility bills, tax records, promissory notes, mortgages, deeds, rent records and other property and
documents. The Springfield Police also took DVD hard drives from the security camera system,
which would have included surveillance video of the raid. The property seized because of the
three searches was taken to an empty building in Lakemore, behind the Municipal Building,
except for the cash, which was kept at the Springfield Township Police Department.

35.     Multiple Officers went about the small community stating Cook and Lindsley
had been arrested and charged with "500 felonies."

36.     Cook could not operate his business, as he had no capital with which to
purchase materials and inventory. Cook had to lay off employees.  Cook did not know what bills
needed to be paid, or who owed his companies money. Cook did not know which tenants had
paid rent, or which customers of his business had outstanding balances. Some tenants quit paying
the rent because they were told by Officer Mizer and others that Cook's bank accounts were
frozen and his assets seized, and that although he had no criminal background, he was going to
prison. Middlebury Banc, Inc. could not conduct its business since the Defendants had taken
possession of all of Middlebury Banc, Inc.'s records and computers.

37.     Lindsley and Cook retained counsel to help them regain possession of their

property. For two months Springfield Township refused to return any property although they had obviously taken possession of documents and records with nothing to do with any alleged unlawful business scheme. It was not until May of 2016 when Springfield Township released a few items such as some personal identification documents, (newly broken) computer equipment, and boxes containing miscellaneous mail and catalogues.

38.    On or about May 23, 2016 a Complaint was filed to recover the unlawfully seized property. After much haranguing, Cook and Lindsley were permitted to survey the evidence room and to mark documents necessary to conduct business. However, once inside the evidence room, Cook and Lindsley discovered records from Whole-Sale Beddings, Inc., Middlebury Banc, Inc., TMK, Lindsley's residence, and Cook's residence had been disorganized and intermingled so it was impossible to identify, let alone retrieve, the necessary information and records. Not only were clearly marked files taken out of order and/or misplaced, documents and papers within folders were misplaced or missing altogether.

39.    By August of 2016, the Summit County prosecutor had communicated to the Springfield Police they had no objection to Springfield Township returning Cook's money. Still, Springfield Township refused to return Cook's funds and other property until *April of 2017*, at which time Springfield Township agreed to return the seized ite

40.    On or about April 16, 2017, Officer Mizer returned $217,062 in cash to Cook at the Springfield Township offices. However, Springfield Police Department's inventory sheet acknowledges that they seized $232,062. Neither Officer Mizer nor Springfield Township could account for the missing money.

41.    Officer Mizer did, however, acknowledge that Cook's cell phone had apparently been stolen from the evidence room, and that his two camcorders were missing. Numerous

documents were also selectively removed from files, such as Samantha Becker's original

mortgage note, leases, letters, and miscellaneous documents. Lindsley's laptop computer had

also been broken, and her computer monitors were not returned. The hard drive from Middlebury

Banc, Inc's., Whole-Sale Mattress', and TMK's security system had been removed so all video

evidence of the raid was gone. Software for the sign making equipment was not returned. Dozens

of Lindsley's campaign signs were also missing, even the large 4'x8' signs.

42.     Another example of how far the Defendants would go to harass and damage the

Plaintiffs borders on the absurd. As indicated, Cook owned various properties, including rental

properties, in and around Lakemore. Occasionally, Cook initiated eviction proceedings against

tenants. Cook initiated one such eviction proceeding against tenant Kelli Bishop based on

Bishop's failure to pay rent. At the eviction proceedings, Bishop showed up with Officer Mizer.

Officer Mizer, *on Village of Springfield Police letterhead*, filed pleadings and otherwise

represented Bishop. The reason Bishop failed to pay Cook's rent was because Officer Mizer told

Bishop that "if I were you, I wouldn't pay him ( Cook) rent."

43.     On or about February 19, 2016, Cook began eviction proceedings against

Lakemore resident Howard Houston. Upon learning of this eviction proceeding, Officer Mizer

intervened on behalf of Houston although Houston had a warrant for his arrest at the time of the

eviction proceedings. Again, Officer Mizer, having never attended law school and not an

attorney, filed pleadings in the eviction matter *using Springfield Township letterhead*. Officer

Mizer also engaged in *ex parte* communications with the Magistrate Judge and appeared on

behalf of Houston in Court.

44.     Because of Officer Mizer's conduct, Cook complained to the Ohio Supreme

Court Disciplinary Council that Officer Mizer was engaged in the unauthorized practice of law.

The Ohio Supreme Court Disciplinary Council agreed with Cook and made the determination

that Officer Mizer was engaging in the unauthorized practice of law. The Ohio Supreme Court

declined to prosecute Officer Mizer, however, based on the Springfield Police Department

assurance to the Supreme Court these were isolated incidents.

45.    Mayor Justice, Captain Ray, and other Defendants conspired to destroy Cook,

and his businesses through an abuse of their authority and power.

46.    In June 2016, Officer Mizer and other Defendants initiated a different tact to

harm the Plaintiffs. Officer Mizer again went to Andrew Miller and suggested that he file a civil

lawsuit.

47.    Springfield Officer Mizer repeatedly met with Miller's counsel on behalf of

Miller and provided Miller's counsel with the "Facts" which were contained in a separate civil

Complaint filed against Cook and Lindsley. Officer Mizer, acting under color of law, continued

to meet with these attorneys, providing them with confidential information she had discovered

from the materials improperly obtained through the raid. Upon information and belief, Officer

Mizer directed various individuals in and around Lakemore to file some sort of civil Complaint

against C o o k  or Lindsley. Officer Mizer selectively removed documents and records from the

evidence room which were used to draft *(4) four more civil lawsuits* against Lindsley and Cook,

Lindsley's son Jacob Novisky,  Cook's son Kevin Cook, Middlebury Banc. Inc., Shady Lane

LLC, T-M-K King, Inc., Summit Non-Profit Housing, Inc., Middlebury Redevelopment Inc., and

John Does 1-10. These lawsuits included, but were not limited to, these allegations:

-    Lauren Gowin alleged there was mold in her apartment, and it made her sick. Her

Complaint was amended to include Gowin's live-in boyfriend, who claimed the

mold also made him and their cat sick.

- Richard Berger alleged in part he was also sick from conditions in his apartment, including either mold and/or lead paint. Mrs. Berger refused to participate in this lawsuit. The Berger's children were tested and found free of mold and lead and had no physical symptoms or injuries. Ultimately, and Mrs. Berger confided to Lindsley that Officer Mizer and Mayor Justice prompted them to file their lawsuit.

- Plaintiff Andrew Miller's suit alleged in part he was defrauded, and Cook slandered him, however he later denied making most of the allegations included in the complaint.

- Plaintiff Samantha Becker claimed she did not sign the real estate documents, and that her signature was forged; she later recanted these allegations, however, stating that she did sign documents. Becker has also denied ever telling Officer Mizer she alleged her signatures were forged.

- Plaintiff Kevin Dupert, although he had no documentation to support his claims, alleged in part he was cheated out of a potential future interest in real estate, and that Cook or Lindsley improperly evicted him and "*converted his 1982 model console television for their own use.*" Unfortunately, Dupert has since passed away from chronic methamphetamine use while running on foot from police officers attempting to apprehend him for driving without a license.

54.      The aforementioned lawsuits were brought by the same attorneys who represented Officer Mizer in her bankruptcy. Remarkably, Officer Mizer met with these attorneys on behalf of all (7) seven civil plaintiffs on an ongoing basis. All five (5) of these civil Complaints were eventually dismissed by Plaintiffs, some of whom have apologized for suing.

55.      Officer Mizer devoted many months to a what can only be described as a

17

campaign on behalf of Mayor Justice and Captain Ray to destroy Lindsley, Cook, and their

businesses. Officer Mizer spent hundreds of taxpayer hours locating and interviewing current and

former tenants of Cook, business associates, and calling over 4,000 individuals who had

purchased mattresses at Cook's retail locations. Springfield Township Officer Mizer identified

herself as a Springfield Township Police Officer investigating the mattress store. She questioned

tenants about their homes in depth, advised tenants not to pay rent, informed them they would

have to move because Cook's assets were frozen, and that Cook was going to prison. She also

met with many agencies with whom Cook or Lindsley had business dealings, such as the Akron

Metropolitan Housing Authority, the Department of Neighborhood Assistance, and the Summit

County Fiscal Office.  Mizer told each person and/or entity that Lindsley and  Cook were

committing fraud.

56.      These Defendants, unlawfully took possession of Plaintiffs' property, refused to

return the property even after whatever legal justification the Defendants were relying upon had

expired or was no longer legally valid, and to this day have failed to return funds and property

belonging to the Plaintiffs. The Defendants are continuing in their violation of Plaintiffs' rights.

## FIRST CAUSE OF ACTION
### Illegal Search and Seizure

57.      Paragraphs 1 through 56 are incorporated by reference as if rewritten.

58.      The actions of Defendants constituted an unlawful and unjustifiable search of

Plaintiffs' home/business/premises and an unlawful seizure of Plaintiffs' property. The

Defendants' actions were deliberately indifferent, reckless, wanton and shocking to the

conscience, which deprived Plaintiffs of their civil rights as secured by the Fourth, Fifth and

Fourteenth Amendments to the United States Constitution and through 42 U.S. C. §1983. The

Defendants' unlawful searches and seizures also violated the laws of the State of Ohio and the

Ohio Constitution and were willful, wanton, reckless, malicious and without legal justification.

59.      As a direct and proximate result of Defendants wrongful conduct Plaintiffs

sustained injuries, damages and a violation of their rights.

## SECOND CAUSE OF ACTION
### First Amendment Retaliation

60.      Paragraphs 1 through 59 are incorporated by reference as if rewritten.

61.      The Plaintiffs engaged in activities protected under the First Amendment to the

United States Constitution. The Defendants unlawfully retaliated against the Plaintiffs based on

the Plaintiffs' exercise of their First Amendment rights. The Defendants actions deprived

Plaintiffs of their civil rights as secured by the First Amendment to the United States

Constitution and through 42 U.S.C. §1983. The Defendants' actions also violated the laws of

Ohio and the Ohio Constitution and were willful, wanton, reckless, malicious and without legal

justification.

62.      As a direct and proximate result of the Defendants' wrongful conduct, the

Plaintiffs sustained injuries, damages and a violation of their rights.

## THIRD CAUSE OF ACTION
### Due Process - Procedural and Substantive

63.      Paragraphs 1 through 62 are incorporated by reference as if rewritten.

64.      The Defendants' actions and omissions constitute a denial of Plaintiffs' rights

as secured by the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiffs were unlawfully denied their property and liberty rights and/or interests without proper

or adequate procedures. Plaintiffs were also denied fundamental rights, including but not limited

to the right to privacy. The Defendants' actions deprived the Plaintiffs of their civil rights as

secured by the Fifth and Fourteenth Amendments to the United States Constitution and through

42 U.S.C. §1983. The Defendants' actions also violated the laws of Ohio and the Ohio

Constitution and were willful, wanton, reckless, malicious and without legal justification.

65.    As a direct and proximate result of the Defendants' wrongful conduct, the

Plaintiffs sustained injuries, damages and a violation of their rights.

## FOURTH CAUSE OF ACTION
### Denial of Access to Courts

66.    Paragraphs 1 through 65 are incorporated by reference as if rewritten.

67.    As a direct and proximate result of the Defendants' misconduct, the Plaintiffs

were denied their ability to access a court of law. The Defendants' unlawful conduct included,

but is not limited to, taking and withholding property and information so Plaintiffs were denied

their right to access courts of law as protected by the First Amendment. The Defendants actions

deprived Plaintiffs of their civil rights as secured by the First Amendment to the United States

Constitution and through 42 U.S.C. §1983. The Defendants' actions also violated the laws of

Ohio and the Ohio Constitution and were willful, wanton, reckless, malicious and without legal

justification.

68.    As a direct and proximate result of the Defendants' wrongful conduct, the

Plaintiffs sustained injuries, damages and a violation of their rights.

## FIFTH CAUSE OF ACTION
### Abuse of Process

69.    Paragraphs 1 through 68 are incorporated by reference as if rewritten.

70.    The Defendants improperly used civil and criminal legal proceedings for an

unintended, malicious, or perverse reason and for which those proceedings were not intended.

The Defendants had an improper and ulterior motive in using these processes. As a direct and

proximate result of the Defendants' misconduct, the Plaintiffs were damaged and otherwise

sustained losses. The Defendants' actions deprived Plaintiffs of their civil rights as secured by the United States Constitution and through 42 U.S.C. §1983. The Defendants' actions also violated the laws of Ohio and the Ohio Constitution and were willful, wanton, reckless, malicious and without legal justification.

71.    As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

<div align="center">

**SIXTH CAUSE OF ACTION**
**Civil Conspiracy**

</div>

72.    Paragraphs 1 through 71 are incorporated by reference as if rewritten.

73.    The Defendants engaged in a malicious combination to damage, harm, and otherwise deny the Plaintiffs their civil rights, through improper means as set forth herein. As a direct and proximate result of the Defendants' conspiracy, the Plaintiffs were harmed, damaged, denied their civil rights and otherwise sustained losses. The Defendants' conspiracy also deprived Plaintiffs of their civil rights as secured by the United States Constitution and through 42 U.S.C. §1983. The Defendants' conspiracy also violated the laws of Ohio and the Ohio Constitution and was willful, wanton, reckless, malicious and without legal justification.

74.    As a direct and proximate result of the Defendants' conspiracy, the Plaintiffs sustained injuries, damages and a violation of their civil rights.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**Spoliation of Evidence**

</div>

75.    Paragraphs 1 through 74 are incorporated by reference as if rewritten.

76.    The Defendants knew pending or probable litigation involving the Plaintiffs and the Defendants knew litigation existed or was probable. Despite this, the Defendants engaged in the willful destruction of evidence with the design to disrupt Plaintiffs' litigation. Defendants'

destruction of evidence has disrupted Plaintiffs' case and damages have been proximately incurred because of Defendants' acts. The Defendants' spoliation also violated the laws of Ohio and the Ohio Constitution and was willful, wanton, reckless, malicious and without legal justification.

77. As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their civil rights.

## EIGHTH CAUSE OF ACTION
### *Monell* Claim: Springfield Township and Village of Lakemore

78. Paragraphs 1 through 77 are incorporated by reference as if rewritten.

79. The Defendants Springfield Township and Village of Lakemore had policies, practices and customs that violated Plaintiffs' rights. The Village of Lakemore adopted a policy of failing to maintain an organized and accessible version of their ordinances.  This policy not only resulted in Lakemore officials making up local "laws" as they went along, but also resulted in individuals not knowing what was permitted or prohibited under Lakemore ordinances. To the extent this absence of ordinance organization, verification, and access was not an official policy of Lakemore, it was a custom of practice. Similarly, Springfield Township had a custom, policy and/or practice of permitting its police to engage in conduct contrary to the laws of the State of Ohio and the Constitution of the United States as set forth herein. Springfield Township and the Village of Lakemore have pervasive and long-standing customs and practices that violate individuals' Constitutional rights and were foreseeable. The Village of Lakemore and Springfield Township also failed to adequately train, screen supervise and discipline their police and other officials. When it became apparent to both Springfield Township and the Village of Lakemore that their officers were not adequately trained, disciplined, supervised or screened, these municipal entities failed to take remedial measures, thus all but guaranteeing the violation of

rights such as those suffered by the Plaintiffs. Last, Mayor Justice's and Captain Ray's directives and instructions to Officer Mizer *vis a vis* the Plaintiffs was unconstitutional and made by individuals with final decision-making authority. Under these circumstances, these policymakers subjected the Village of Lakemore and Springfield Township to liability under *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978).

80.     As a direct and proximate result of the Village of Lakemore and Springfield Township's misconduct, the Plaintiffs sustained injuries, damages and a violation of their civil rights.

## NINTH CAUSE OF ACTION
### Tortious Interference with a Business Relationship/Contract

81.     Paragraphs 1 through 80 are incorporated by reference as if rewritten.

82.     The Defendants were aware of the existence of valid contracts and/or business relationships which had the existence of a recognizable economic expectancy between the Plaintiffs and various third parties. The Defendants intentionally and improperly interfered with these contracts, business relationships and/or economic expectancies. As a direct and proximate result of Defendants' interference, the Plaintiffs sustained measurable monetary damages. The Defendants' tortious interference also violated the laws of Ohio and the Ohio Constitution and was willful, wanton, reckless, malicious and without legal justification.

83.     As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

## TENTH CAUSE OF ACTION
### Willful, Wanton, Reckless, Malicious Conduct

84.     Paragraphs 1 through 83 are incorporated by reference as if rewritten.

85.     The Defendants engaged in actions and omissions, that constituted willful,

wanton, reckless and/or malicious conduct. Their conduct was so egregious it precludes them from being entitled to the defenses and immunities in Ohio Revised Code § 2744.01, *et seq*.

86.    As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

## ELEVENTH CAUSE OF ACTION
### Failure to Intervene

87.    Paragraphs 1 through 86 are incorporated by reference as if rewritten.

88.    The Defendants knew or should have known that other Defendants were violating Plaintiff's rights as protected under the United States Constitution and the laws of the State of Ohio. These Defendants also had the opportunity to stop the violation of Plaintiffs' rights and/or the ability to prevent the violations from continuing. Despite this knowledge and opportunity, these Defendants failed to take affirmative steps to prevent the Plaintiffs from having their rights further violated.

89.    As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

## TWELFTH CAUSE OF ACTION
### Defamation: Libel and Slander - Per Se and Per Quod and False Light

90.    Paragraphs 1 through 89 are incorporated by reference as if rewritten.

91.    The Defendants repeatedly made false statements about the Plaintiffs to third parties while not having the legal privilege to do so. The Defendants made these false statements knowingly and/or maliciously and/or with a reckless disregard for the veracity of the statements. Some of the Defendants' false statements regarding the Plaintiffs were defamatory *per se* because they carried a presumption of falsity, while other statements were defamatory *per quod* in that Plaintiffs can establish special harm and damages flowing from Defendants' defamatory

statements. The Defendants also engaged in an unlawful invasion into Plaintiffs' private matters thus violating Ohio's false light laws. The Defendants' misconduct as set forth herein also violated other laws of the State of Ohio and the Ohio Constitution and was willful, wanton, reckless, malicious and without legal justification.

92.     As a direct and proximate result of the Defendants' misconduct, the Plaintiffs sustained injuries, damages and a violation of their rights.

<div align="center">

**THIRTEENTH CAUSE OF ACTION**
**Conversion**

</div>

93.     Paragraphs 1 through 92 are incorporated by reference as if rewritten.

94.     Based on the facts set forth herein, the Defendants initially engaged in the wrongful act of conversion when they improperly took and maintained possession of Plaintiffs' property over which they had no legal right.

95.     The Defendants have continued to commit the tort of conversion because they have possessed Plaintiffs' property beyond any legal right to do so. Defendants have refused to return Plaintiffs' property despite the fact that Plaintiffs have demanded the return of their property, and Plaintiffs have suffered and continue to suffer damages because of Defendants' conversion.

96.     As a direct and proximate result of the Defendants' conversion, the Plaintiffs sustained injuries, damages and a violation of their rights.

<div align="center">

**DAMAGES**

</div>

97.     Paragraphs 1 through 96 are incorporated by reference as if rewritten.

98.     As a direct and proximate result of the Defendants' acts, omissions and misconduct, the Plaintiffs suffered losses, damages, incurred attorney fees, and suffered violations of their rights as secured by the State of Ohio and the United States Constitutional.

Plaintiffs also suffered losses, damages and other injuries and economic and non-economic losses, some or all of which may be permanent.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for this Court:

(A)     Award Plaintiffs compensatory and consequential damages for all the injuries and damages identified in an amount to be shown at trial;

(B)     Award punitive damages against the individual Defendants in an amount to be shown at trial;

(C)     Equitable relief, including without limitation, that the Village of Lakemore and Springfield Township be made to return all of Plaintiffs' property, and to promulgate, adopt, train, maintain and enforce policies to prevent future instances of the misconduct described;

(D)     Award Plaintiffs reasonable attorneys' fees and costs of this action and other costs that may be associated with this action; and

(E)     Grant Plaintiffs other relief this Court deems equitable, necessary, and just.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall, 0070165
Brian Unger, 0096884
The Law Offices of Warner Mendenhall, Inc.
190 North Union Street, Suite 201
Akron, Ohio 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

/s/ Warner Mendenhall.
Warner Mendenhall, 0070165

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0844

RICHARD T COOK
5519 TALLMADGE ROAD
Rootstown, OH, 44272

-VS-                                                              **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

CHIEF OF POLICE KENNETH RAY
C/O THE VILLAGE OF LAKEMORE
1400 MAIN STREET
Lakemore, OH   44250

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

WARNER MENDENHALL
190 N. UNION ST.
SUITE 201
AKRON, OH   44304

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0844

RICHARD T COOK
5519 TALLMADGE ROAD
Rootstown, OH, 44272

-VS-                                                         **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

RICHARD JUSTICE
2498 Lakeside Dr
Lakemore, OH   44250

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common
Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

WARNER MENDENHALL
190 N. UNION ST.
SUITE 201
AKRON, OH   44304

**You are hereby summoned and required to serve upon the attorney listed above, or upon the
party if they have no attorney of record, a copy of an answer to the COMPLAINT within
twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your
answer must be filed with the Court within three days after the service of a copy of the answer on
the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in
the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

# IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0844

RICHARD T COOK
5519 TALLMADGE ROAD
Rootstown, OH, 44272

-VS-                                                                         **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron, OH   44312

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

WARNER MENDENHALL
190 N. UNION ST.
SUITE 201
AKRON, OH   44304

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020

## IN THE COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO

CASE NUMBER:   CV-2020-03-0844

RICHARD T COOK
5519 TALLMADGE ROAD
Rootstown, OH, 44272

-VS-                                                          **SUMMONS**

SPRINGFIELD TOWNSHIP
2459 Canfield Rd
Akron,   OH   44312

**TO the following:**

VILLAGE OF LAKEMORE
1400 Main St
Lakemore, OH   44250

You have been named as a defendant(s) in a complaint filed in the Summit County Court of Common Pleas, Summit County Courthouse, 205 S. High St., Akron, Ohio, 44308.

A copy of the COMPLAINT is attached hereto.   The name and address of the Plaintiff's attorney is:

WARNER MENDENHALL
190 N. UNION ST.
SUITE 201
AKRON, OH   44304

**You are hereby summoned and required to serve upon the attorney listed above, or upon the party if they have no attorney of record, a copy of an answer to the COMPLAINT within twenty-eight (28) days after service of this summon on you, exclusive of the day of service.   Your answer must be filed with the Court within three days after the service of a copy of the answer on the attorney, or upon the party, if there is no attorney of record.**

**If you fail to appear and defend, judgment may be rendered against you for the relief demanded in the COMPLAINT.**

Sandra Kurt
Summit County Clerk of Courts

March 4, 2020